## 998.  BEDINGFIELD *v.* FIRST NATIONAL BANK.

1. In no case can a judge of a county court appoint a judge pro hac vice. A judge of one county court may preside for the judge of another county court, but the selection of a judge pro hac vice must be made either by agreement of the parties or by the clerk of the county court, or by the clerk of the superior court.
2. One can not be a judge pro hac vice de facto.
(*a*) The facts, circumstances, and conditions which would reasonably lead persons, having business with an officer, to presume the incumbent to be the lawful officer and to recognize him as such, can not arise in the case of an individual· confessedly selected to try only one case. "An officer de facto is one *who has the reputation* of being the officer he assumes to be, and yet is not a good officer in law." The reputation must depend upon other acts than that in question, and a single act can not establish a general reputation for doing that act.
(*b*) The law allowing the selection of a judge pro hac vice is merely a provision against the emergency which arises when a trial judge is disqualified. There is no such office as judge pro hac vice, and a de facto officer can not exist where there is no such office de jure. As a court is incorporeal and can not exist without a judge, the selection of a judge pro hac vice is a mere temporary expedient to speed the trial by preventing a hiatus in the disposition of the cause.
3. The judgment of a court which has no jurisdiction of the case is entirely void. Where a defendant has had his day in court, neither he nor his surety can, by illegality, attack the judgment rendered by the court having jurisdiction of the subject-matter. Where a court has jurisdiction, it is to be presumed that it had before it pleadings and evidence authorizing the judgment rendered; and if the judgment is erroneous it may be reviewed or a motion made to set it aside. Where, for the lack of a judge, there is no court having jurisdiction of the case, there is no such presumption, and all of the proceedings are null and void. A judgment void because not rendered by a court, or because rendered by a court without jurisdiction, can be attacked by illegality, because the defendant has never had his day in court. The rights of a surety follow the fortunes of the principal.

Appeal, from Jefferson superior court—Judge Rawlings. January 13, 1908.

Submitted March 12,—Decided April 9, 1908.

The plaintiff in error excepts to the judgment of the judge of the superior court overruling his affidavit of illegality to a fi. fa. issued from the county court of Jefferson county. The case was appealed to the superior court, and the affidavit of illegality was there overruled by the judge, upon an agreed statement of facts, from which it appeared, that the defendant in error brought a suit in trover, with bail process, against one Brown, for the recovery of cer-

tain personal property alleged to be in the possession of Brown, and of the value of $500. The suit was brought and a part of the personal property was seized on November 26, 1906, and Brown entered into a replevy bond for the eventual condemnation money, with Bedingfield and Peterson as sureties. This bond was accepted by the officer. At the appearance term in the county court, no defense was filed by the defendant, and neither of the sureties appeared or answered, and the case was marked in default. At the trial term, in April, 1907, there was no appearance by the defendant, nor did either of the sureties appear in person or by attorney. The judge of the county court, by reason of relationship to stockholders in the First National Bank, the plaintiff, was disqualified to preside in the case. It was further agreed to be a fact that the judge of the county court of Jefferson county was ex-officio clerk of that court, no clerk of the county court having been appointed. It was further admitted that neither of the parties, nor their counsel, agreed or selected any attorney or other person to preside in the case; nor did the clerk of the superior court select a judge pro hac vice. The judge passed the following order: "Georgia, Jefferson County. In the county court of said county, at the April term, 1907. In the case of the First National Bank of Louisville, Ga., against Ben Brown, the same being a suit in trover, it appearing that Judge J. W. White, judge of said court, is disqualified by reason of relationship to stockholders of the First National Bank of Louisville, Ga., the plaintiff in said case, and he also being clerk of said court, it is ordered that J. K. Kinman, a member of the bar of Jefferson county, be and he is hereby appointed to preside in said case and to render up judgment therein. Let this order be spread upon the minutes of this court. [Signed] J. W. White, Judge County Court, Jefferson County."

Mr. Kinman, who was appointed by the judge of the county court as judge pro hac vice, it is admitted, was not the judge of a county court. He presided in accordance with the foregoing order of appointment, and, after hearing evidence, entered up judgment in the case as follows: "No defense having been filed in the above-stated case, and the plaintiff, upon the trial of the same, having proved title to the property described in the within petition and value thereof, and having elected in open court to take a money verdict for its damage, and the defendant having

given bond for the eventual condemnation money, with S. L. Peterson and N. W. Bedingfield as sureties, it is ordered and adjudged that the plaintiff recover of the defendant, Ben Brown, and of S. L. Peterson and N. W. Bedingfield as sureties on the trover bond, the principal sum of five hundred dollars, with interest from this date at seven per cent. per annum, and seven and one half dollars as costs, and let the defendant be in mercy. Judgment signed this, the 13th day of April, 1907. [Signed] J. K. Kinman, Judge pro hac vice." Upon this judgment an execution issued, in accordance therewith, which was levied on the property of Bedingfield, one of the sureties. To this levy Bedingfield filed an affidavit of illegality upon the following grounds: (1) Because there is no legal judgment against this deponent, upon which said fi. fa. could issue. (2) Because no legal judgment has ever been rendered against this defendant, upon which any fi. fa. could legally issue. (3) Because the alleged judgment upon which such fi. fa. purports to be issued was rendered and entered up by one J. K. Kinman, not being judge of said court and not being judge of any county court in this State. (4) Because the judgment is void upon which said fi. fa. is issued, and said fi. fa. is void, because said Kinman, the attorney who rendered the judgment in said case as judge pro hac vice, was not selected to preside in said case by consent of the parties to the case, or their counsel; nor was he selected or appointed by the clerk of said county court (the judge of the said court being the clerk thereof), or by the clerk of the superior court to preside in said case; and, therefore, he had no legal power or authority to preside or to render any judgment in said case.

*Cain & Hardeman,* for plaintiff in error.

*R. L. Gamble, Phillips & Phillips,* contra.

RUSSELL, J. (After stating the foregoing facts).

We think the judge erred in overruling the affidavit of illegality. It was admitted that the judge of the county court was disqualified, and that Mr. Kinman was not the judge of any county court in this State. It became necessary, then, to have a judge pro hac vice. This judge pro hac vice is only to be appointed in the manner provided by law, and any one selected to preside in the trial of a case, in the emergency created by the disqualification of the judge, must be appointed and selected in one of the modes

prescribed by law. If this be not done, there is no judge; consequently no court; and, as a sequence, there can be no judgment, and the entire proceeding is a nullity. Section 4177 of the Civil Code authorizes county judges to hold county court in any county of the State having a county court. Section 4178 is as follows: "When from any cause a county judge in this State is disqualified from presiding in any case in his court, if the parties consent thereto and select any attorney practicing in the court to preside in such case, the judge shall have such consent entered upon the records of the court, and the attorney so selected shall exercise all the functions of judge in that case; and should the parties fail or refuse to agree upon counsel to preside in such case, it shall be the duty of the judge of such court to call in a judge of a county court to preside." This code section seems, by its inclusion of all of the duties of the judge of the county court in the premises, to exclude any right upon his part to do more (in case of his own disqualification) towards selecting a judge pro hac vice than to procure, if he can, the services of a judge of another county court. This is similar to the provision of law relating to the duties of the judge of a superior court under like circumstances. He can select another judge of a superior court to try cases in which he is disqualified, either with or without the consent of the parties, but an attorney chosen to preside as judge pro hac vice must be selected either by the parties themselves, if they can agree, or, if not, by the clerk. We are clear, then, that in this case the judge of the county court, as such, could not select an attorney at law as judge pro hac vice.

The suggestion that as the county court of Jefferson county had no clerk, and as the judge was ex officio the clerk of that court, he might, as clerk, select an attorney at law as judge pro hac vice, is not only disputed by the inference to be drawn from the language of §4178 of the Civil Code, but is also expressly contradictory of the terms of §4179 of the Civil Code: "Should the parties litigant fail or refuse to agree upon counsel to preside in such case, it shall be the duty of the clerk of said court, where there is one, and the duty of *the clerk of the superior court,* where there is no clerk of the county court, to select any attorney practicing in the court, to preside in such case and try the same."

It is conceded by learned counsel for the plaintiff in error that

the judge pro hac vice was not properly appointed, and that the judge of the county court, in accordance with the provisions of §4176, or the later enactment embodied in §4178, should have procured the judge of a county court to preside in his stead, or else an attorney at law should have been selected by the clerk of the superior court; but it is insisted that the judgment was entered by a de facto judge, and that the judgment is not subject to attack by illegality.

2. Being satisfied that the appointment of Mr. Kinman was illegal, we come next to consider whether he was a de facto judge of the county court, in spite of the irregularity of his appointment. Can he be considered a de facto officer, in any view of the case? Mere irregularities in the qualification or in the appointment of an officer will not prevent his being a de facto officer. If he be illegally elected or appointed by one who himself has only a claim to an office, it is still possible for his acts to be recognized as valid, because he was exercising de facto the functions of an office. But to constitute one an officer de facto there must be not only facts, circumstances, or conditions which would reasonably lead persons, who have relations or business with the office, to recognize him and treat him as the lawful incumbent, and to submit to and invoke his official action without inquiry as to his title,—he must not only have the reputation of being an officer, but, above all else, there must be an office corresponding with that which he purports to hold. If there is no office, there can be no officer de facto. Lord Ellenborough, in the case of Rex v. Bedford Level, 6 East, 356, generalized Lord Holt's definition of a steward, in Parker v. Kett, 1 Ld. Raym. 658 ("a steward de facto is no other than he who has the reputation of being such steward, and yet is not a good steward in point of law"), into the definition, which has so often been ascribed to him, that "an officer de facto is one who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law." In 8 Am. & Eng. Enc. of Law (2d ed.), 783, note 2, will be found a large number of definitions, from various jurisdictions, of what constitutes a de facto officer. In each of these jurisdictions it has been held that there must be a specific office, the duties of which the de facto officer assumes to discharge. Our Supreme Court has approved Lord Ellenborough's definition, in *Hinton* v. *Lindsay*, 20

*Ga.* 746. But it does not follow from this that there can be a de facto judge pro hac vice. Indeed, there can not be, because the statute with reference to the selection of a judge pro hac vice provides only for an emergency,—the disqualification of the judge, —and no office is created. One could not have the reputation of being a judge pro hac vice, when the very term means, judge for this turn,—only one case,—and there could not be facts or conditions which would lead the public to recognize and treat him as a lawful officer, because the acts which are to raise the presumption of the legality of his doings must be others than the ones in dispute. State *v.* Wilson, 34 N. H. 543; Goulding *v.* Clark, 34 N. H. 148; Hall *v.* Manchester, 39 N. H. 295. In any event, one incumbency of the bench for the purpose of the trial of a single case could not give him the reputation of being a judge pro hac vice, even if there were such an office. And he could not be a de facto judge of the county court, because there is already a judge of the county court de jure; and it is well settled that there can not exist at one and the same time an officer de jure and one de facto, or even two de facto officers. If there is no such office as judge pro hac vice (and we feel certain from the nature of things there can not be such an office), there can be no de facto judge pro hac vice; and Mr. Kinman could not be de facto judge of the county court, not only because there was a judge of the court de jure, but because, at most, he. could only be considered as a substitute for the judge of the county court; and in the very case of Rex *v.* Bedford Level, supra, in which Lord Ellenborough's definition is given, it was held that a deputy can not acquire the reputation of being the principal. For the same reason a judge pro hac vice, being selected for a special occasion, can not acquire the reputation of being the judge.

Without going to the pains of citing the numerous authorities we have examined, we hold unhesitatingly that Mr. Kinman, as judge pro hac vice, can not be considered as a de facto officer. If he had been properly appointed he would not have been judge of the county court, but merely a person procured under the provisions of the statute for a special purpose to meet the emergency arising from the disqualification of the judge, and in order to preserve the court for the trial of a special case. There can be no de facto judge pro hac vice. One chosen for that purpose must be

either judge pro hac vice de jure; or he has no rights, powers, or authority whatsoever. As held in *Rogers* v. *Felker, 77 Ga.* 46, if a judge who is disqualified presides and renders judgment, the judgment is not void, but merely voidable. In such a case, if the judge is qualified generally, and the court of which he is the lawful judge has jurisdiction of the person of the defendant and of the subject-matter of the suit, he ought to retire from the bench, if he be disqualified; but if he does not, the judgment is not void, but voidable. In the case of the judge pro hac vice, unless he has been selected in accordance with the statute, he has no right to go upon the bench at all, and what might be errors, subject to review in the qualified judge, are swallowed up in the greater consideration that such an incumbent has not even the right to commit errors.

The irreconcilable conflict of authority referred to by Judge Lewis in *Herrington* v. *State,* 103 *Ga.* 319 (29 S. E. 931, 68 Am. St. R. 95), is upon the proposition as to whether or not the doctrine of an officer de facto can be applied without presupposing the existence of an office de jure. As said by Justice Lewis in that case, "much respectable authority can be produced to the effect that where an office is provided for by an unconstitutional act of the legislature, the incumbent of such an office, for the sake of public policy and protection of private rights, will be recognized as an officer de facto until the unconstitutionality of the act has been judicially determined. On the other hand, there is . . perhaps a greater weight of authority directly the reverse." In the *Herrington* case the court was dealing with a purported office, alleged to have been created without even the color of legislative authority, by the commissioners of roads and revenues of Fulton County.

In the case of *Norton* v. *Shelby County,* 118 U. S. 425 (6 Sup. Ct. 1121, 30 L. ed. 178), in which Justice Field delivered the opinion of the Supreme Court of the United States, that court was dealing with an attempt to create an office by an unconstitutional act. In that case, before ruling that ."an unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed," the court held, that "while acts of a de facto incumbent of an *office* lawfully created by law and existing are often held to be

binding from reasons of public policy, the acts of a person assuming to fill and perform the duties of an office which does not exist de jure can have no validity whatever in law."

In the present case we are not dealing with a de facto officer created under an unconstitutional act. The law making provision for judges pro hac vice has been held to be constitutional, but it does not create an office; it merely provides against a hiatus in the office. As we have before remarked, there is no such office as judge pro hac vice, and, therefore, under the ruling in the first headnote of *Herrington* v. *State,* supra, "the law recognizes no one even as an officer de facto, who fills an alleged public office that has no existence under any constitutional provision, or by virtue of any color of legislative enactment." If the legislature, instead of the provision made (for the selection, from time to time as the emergency may require, of a suitable person to preside in a case in which the judge is disqualified), were to designate some particular person for that purpose, or provide for the selection of one individual who, for a fixed term, should preside in all cases in which the judge might be disqualified, it would be possible, perhaps, to create the office of judge pro hac vice. And in such event it would be possible for there to be a de facto incumbent of this office. So far as we are aware, our courts have gone no further in deciding what is a good de facto officer than to hold, in *Poole* v. *Perdue,* 44 *Ga.* 457, 458, that one who holds the commission of the Governor to an office which the Governor, by the constitution, is authorized to fill, is at least a de facto officer; and, in *Gunn* v. *Tackett,* 67 *Ga.* 725, that a constable was a good de facto officer although he had not qualified by giving bond; because he had been appointed by the justice of the peace, who had authority to appoint.

3. The strongest contention of the learned counsel for the defendant in error is that the defendant in execution could not attack the judgment by affidavit of illegality. To sustain this proposition counsel cite: Civil Code, §4742; *Rodgers* v. *Evans,* 8 *Ga.* 143 (52 Am. D. 390), and citations; *Mangham* v. *Reed,* 11 *Ga.* 141; *Brown* v. *Wilson,* 59 *Ga.* 604; *Greene* v. *Oliphant,* 64 *Ga.* 567; *Harbig* v. *Freund,* 69 *Ga.* 180; *Douglas* v. *Singer Company,* 102 *Ga.* 560 (27 S. E. 664); *So. Ry. Co.* v. *Daniels,* 103 *Ga.* 541 (29 S. E. 761); *Bird* v. *Burgsteiner,* 108 *Ga.* 654 (34 S. E. 183);

*Summerlin* v. *Floyd,* 124 *Ga.* 980 (53 S. E. 452); *Sanford* v. *Bates,* 99 *Ga.* 145 (25 S. E. 35); *Hartsfield* v. *Morris,* 89 *Ga.* 254 (15 S. E. 363). We concede the proposition, as stated by the learned counsel, that after a defendant has had his day in court, he can not attack the judgment by affidavit of illegality, and that a surety on a bail-trover bond must follow the fortunes of his principal, and if the principal has had his day in court, so·has the surety. *Jackson* v. *Guilmartin,* 61 *Ga.* 544; *Price* v. *Carlton,* 121 *Ga.* 23 (48 S. E. 721); *Waldrop* v. *Wolff,* 114 *Ga.* 620 (40 S. E. 830). But while it is held in these cases that the bail can not go behind the judgment or attack it by affidavit of illegality, any more than the principal can, it must conversely be held that he can attack a judgment wherever the principal may. And if the principal has not had his day in court, either principal or surety may take advantage of that fact. In *Sanford* v. *Bates,* supra, the court did not have jurisdiction of the person, but in all of the cases in which it has been held that a judgment can not be attacked by illegality, there was at least a court competent to deal with the subject-matter.

In the present case it follows, from what we have already said, that there was no court which had jurisdiction to deal with either the subject-matter or the person; and it has always been held that a judgment can be attacked by affidavit of illegality where the court had no jurisdiction, either of the person or of the subject-matter.

The decision in *Rodgers* v. *Evans,* 8 *Ga.* 143 (52 Am. D. 390), cited above, while holding that upon an affidavit of illegality to the execution the validity of the judgment can not be attacked, also holds that the judgment of a court which has no jurisdiction of the case is entirely void. In the opinion, the latter principle was considered to be so axiomatic that no amplification of the first headnote was deemed necessary; and the court proceeds to say, in the second division of the opinion, "but where the court has jurisdiction both of the cause and the parties, and proceeds *erroneously,* the judgment, notwithstanding the error, is binding until it is vacated or reversed."

Through all of the Georgia cases that we have examined, the cases where affidavit of illegality will lie as a remedy and those where this remedy is unavailable are distinguished by the fact that

in the latter class the court had jurisdiction or was competent to deal with the subject. Where this was so, illegality could not go behind the judgment. But it is recognized inferentially in many cases that an affidavit of illegality is available to bring to the attention of the court the fact that the execution issued illegally because there was no valid judgment, for the reason that the court was without jurisdiction to render it. In the present instance the so-called court was in reality no court. Its every act was a nullity, and the order upon the record itself disclosed this fact. The defendant in execution can not go behind the judgment by an affidavit of illegality *when he has had his day in court,* nor can his surety on a bond in bail-trover. But the surety had not had his day in court in this case; for lack of a court the judgment was void; and illegality lies where the judgment upon which the execution issued is wholly void. *Planters Bank* v. *Berry,* 91 *Ga.* 264 (18 S. E. 137). See also *Beall* v. *Sinquefield,* 73 *Ga.* 50, in which the distinction to which we have adverted is recognized, and it is held that illegality will not lie where a judgment is merely voidable, and, inferentially, that this remedy is available where the judgment is absolutely void.

In *Brantley* v. *Greer,* 71 *Ga.* 11, it was held: *"Unless a judgment is void,* an affidavit of illegality is not the proper mode of setting it aside. If the defects alleged to exist in a judgment amount only to irregularities, they should be corrected by a motion," etc. It may safely be asserted that the presumption as to the legality of the judgment which the law will not suffer to be . attacked by illegality arises only where it is apparent that the judgment was rendered by a court of competent jurisdiction, in relation to subject-matter within such jurisdiction. Where it is apparent that the court had no jurisdiction, and especially where it appears that there was no court competent to deal with the subject-matter, the affiant may allege and prove that the execution has issued illegally against his property. With reference to a court of competent jurisdiction, the presumption is that it had before it sufficient evidence to authorize the award of the judgment upon which the execution was based. And this is the reason of the rule that the illegality can not go behind the judgment. Both the reason and the rule cease when it appears that the judgment was rendered by one who had no authority to award judgment.

We think, therefore, that the judge of the superior court erred in overruling the illegality. It should have been sustained.

*Judgment reversed.*