Harry A. BENDIBURG, Individually and as Administrator of the Estate of Carl Bendiburg, Deceased, Plaintiff,

v.

Pamela S. DEMPSEY, et al., Defendants.

Civ. A. No. 1:87–CV–1774–JOF.

United States District Court, N.D. Georgia, Atlanta Division.

July 14, 1988.

Harold Dennis Corlew, Atlanta, Ga., for plaintiff.

William C. Joy, Victoria H. Tobin, Office of State Atty. Gen., Bruce McCord Edenfield, Hicks, Maloof & Campbell, Atlanta, Ga., Jerry Lovvorn Gentry, Sams Glover & Gentry, Marietta, Ga., Alan F. Herman, Freeman & Hawkins, J. Caleb Clarke, III, Culbreth & Clarke, Earl W. Gunn, Sidney F. Wheeler, Long, Weinberg, Ansley & Wheeler, Lawrie E. Demorest, Ralph Jerry Kirkpatrick, Wendy L. Hagenau, Randall L. Hughes, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for defendants.

## ORDER

FORRESTER, District Judge.

This matter is before the court on (1) defendant Adventist Health Systems/Sun-

belt, Inc.'s[1] motion for summary judgment, Fed.R.Civ.P. 56; (2) defendant Sallie T. Walker's motion for summary judgment, *id.;* (3) defendant Walker's motion for imposition of sanctions, Fed.R.Civ.P. 11; and (4) defendant Cobb County's motion to dismiss. Fed.R.Civ.P. 12(b)(6).

Defendant Adventist Health Systems' motion for summary judgment was filed October 23, 1987. By stipulation between the parties filed December 14, 1987, however, defendant Adventist Health Systems was dismissed from this action with prejudice. Accordingly, the motion for summary judgment is now moot and DENIED as such. Defendant Walker's motions for summary judgment and for imposition of sanctions and defendant Cobb County's motion to dismiss shall be considered separately following a recitation of the relevant facts.

## I. STATEMENT OF FACTS.

The following facts are based upon the court's review of the relevant pleadings of record as well as the affidavit and deposition testimony and the various exhibits submitted by the parties.

The parties to this action are (1) plaintiff Harry D. Bendiburg who brings this action both in his individual capacity as well as in his capacity as administrator of the estate of his son, Carl Austin Bendiburg (hereinafter "plaintiff's decedent" or "Carl"), Complaint, ¶ 3; (2) defendant Cobb County Department of Family and Children Services (DFACS), an instrumentality of the State of Georgia, *id.,* ¶ 7; (3) defendant Cobb County, a political subdivision of the State of Georgia, *id.,* ¶ 9; (4) defendant Medical Personnel Pool of Atlanta, Inc. (Med Pool), a corporation organized and existing under the laws of the State of Georgia, *id.,* ¶ 11; (5) defendant Drs. Klaus, Cohen and Weil Orthopaedic Associates, P.C., a professional corporation organized and existing under the laws of the State of Georgia, *id.,* ¶ 13; (6) defendant Pamela S. Dempsey, an official of defendant DFACS, *id.,* ¶ 4; (7) defendant Sue Terry, a supervisory official of defendant DFACS, *id.,* ¶ 5; (8) defendant Nancy J. Pendergraft, also a supervisory official of defendant DFACS, *id.,* ¶ 6; (9) defendant Sallie T. Walker, a judicial officer of the Cobb County Juvenile Court, *id.,* ¶ 8; (10) defendant Nancy Harrison, an employee of defendant Med Pool, *id.,* ¶ 10; (11) defendant Richard Cohen, M.D., an employee of defendant Klaus, Cohen and Weil Orthopaedic Associates, *id.,* ¶ 12; and (12) defendant Baheeg Shadeed, M.D., a resident of the State of Georgia, *id.,* ¶ 14. The court's jurisdiction is predicated upon 28 U.S.C. §§ 1331 & 1343. *Id.,* ¶ 2.

This action, in which plaintiff alleges violations of 42 U.S.C. § 1983 as well as the state law tort of battery, arose out of the following series of events. On September 15, 1985, plaintiff's decedent, Carl Bendiburg, was seriously injured in an automobile accident and admitted to the Smyrna Hospital for treatment. Defendant Walker's Statement of Material Facts, ¶ 2; Plaintiff's Statement of Material Facts, ¶ 2. Among the injuries suffered by Carl was a compound fracture of the left leg. On November 9, 1985, Carl was discharged from Smyrna Hospital. Because of a continuing infection of the left leg contracted during his stay in the hospital, however, Carl continued to receive at-home nursing care furnished by defendant Med Pool. Defendant Walker's Statement of Material Facts, ¶ 3; Plaintiff's Statement of Material Facts, ¶ 3. Among the responsibilities of these nurses was to ensure that Carl was administered the proper dosage of antibiotics prescribed for his continuing infection. *Id.* When the nurses experienced increased difficulty in administering the prescribed medical intravenously,[2] plaintiff was asked to consent to the insertion of a Hickman catheter[3] into Carl which would

---

1. D/b/a Smyrna Hospital.

2. Due to loss of venous access or collapsed veins.

3. This device is described as "a long silicone rubber catheter which is inserted into either the subclavian (collarbone) or jugular (neck) vein and then threaded through the patient's upper venous system to the juncture of the superior vena cava and the right atrium of the patient's heart." Plaintiff's Response to Defendant Shadeed's Motion for Summary Judgment at 4.

allow for direct administration of the antibiotics. Defendant Walker's Statement of Material Facts, ¶ 5; Plaintiff's Statement of Material Facts, ¶ 5. Plaintiff refused to consent to the procedure. *Id.*

On November 27, 1985, defendant Harrison, a registered nurse employed by defendant Med Pool, contacted defendant Dempsey of the Cobb County Department of Family and Children Services (DFACS). Defendant Walker's Statement of Material Facts, ¶ 8; Plaintiff's Statement of Material Facts, ¶ 8. Defendant Harrison informed defendant Dempsey of the circumstances regarding Carl's infection, the need for intravenous medication, the perceived need for the Hickman catheter, and plaintiff's refusal to consent to insertion of the Hickman catheter. *Id.* As a result of this conversation, defendant Dempsey prepared and presented to the Juvenile Court of Cobb County an *ex parte* deprivation petition pursuant to O.C.G.A. § 15–11–23, *et seq.* Defendant Walker's Statement of Material Facts, ¶ 9; Plaintiff's Statement of Material Facts, ¶ 9. The petition was originally presented to and to be heard by Judge B. Wayne Phillips of the Cobb County Juvenile Court. Defendant Walker's Statement of Material Facts, ¶ 10; Plaintiff's Statement of Material Facts, ¶ 10. Judge Phillips declined to hear the petition, however, after learning that it involved plaintiff, with whom he was acquainted. *Id.* For this reason, Judge Phillips directed that the petition instead be presented to defendant Walker.

As will be discussed at length below, defendant Walker's exact legal status is disputed; however, the parties agree that she heard the petition under the title "Judge Pro Tempore" and pursuant to a standing order[4] issued by Judge Phillips July 12, 1985. Defendant Walker's State-ment of Material Facts, ¶¶ 11–13; Plaintiff's Statement of Material Facts, ¶¶ 11–13. In any event, after hearing testimony from defendant Dempsey, defendant Walker entered an order granting the *ex parte* deprivation petition and, in so doing, caused custody of plaintiff's decedent to be placed temporarily in defendant DFACS. Defendant Walker's Statement of Material Facts, ¶ 13; Plaintiff's Statement of Material Facts, ¶ 13. Pursuant to this order, Carl was readmitted to Smyrna Hospital where the controversial Hickman catheter was inserted. Defendant Walker's Statement of Material Facts, ¶ 15; Plaintiff's Statement of Material Facts, ¶ 15. Carl was released from Smyrna Hospital November 29, 1985. On December 2, 1985, custody of Carl was restored to plaintiff by and through a consent agreement between plaintiff and defendant DFACS. Complaint, ¶ 27. On December 14, 1985, Carl died as a result of a massive pulmonary embolus.[5] *Id.*, ¶¶ 28–30. This action followed.

## II. DISCUSSION

### A. *Defendant Walker's Motion for Summary Judgment.*

1. Fed.R.Civ.P. 56.

Before turning to the merits of defendant Walker's motion for summary judgment, the court will set forth the standard controlling practice under Fed.R.Civ.P. 56. Courts may grant motions for summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the burden of demonstrating that no genuine issue of material fact exists in the case. *Hines v. State Farm Fire & Casualty Company,* 815 F.2d 648 (11th Cir.1987). This burden may be discharged by demonstrating that

---

4. This standing order served to appoint defendant Walker as judge pro tempore of the juvenile court in the event Judge Phillips was ill or absent or was disqualified from hearing a particular case. Plaintiff challenges Judge Phillips' authority to enter such a standing order and therefore defendant Walker's jurisdiction to hear the petition in question. Plaintiff likewise challenges the manner in which Judge Phillips "disqualified" himself from hearing the Bendi-burg petition. These issues shall be discussed *infra.*

5. "A clot or other plug brought by the blood from another vessel and forced into a smaller one, thus obstructing the circulation." *Dorland's Illustrated Medical Dictionary,* 25th Edition (1974).

there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether this burden is met, courts should review the evidence of record and all factual inferences in the light most favorable to the party opposing the motion. *Hines.* Summary judgment should be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex.*

2. Judicial Immunity.

Plaintiff concedes "that if [defendant Walker] was in fact a legally appointed judge pro tempore of the Juvenile Court of Cobb County, then she is entitled to judicial immunity and the action against her must be dismissed." Response at 1. It is plaintiff's contention, however, that defendant Walker was not a lawfully appointed judge pro tempore and therefore is not immune from damages in this action. In this regard, plaintiff presents two arguments. First, plaintiff argues that Judge Phillips' July 12, 1985 standing order by which defendant Walker was appointed was entered without regard to the statutory framework established for such appointments and thus is a nullity. Second, it is argued that regardless of the validity of the July 12, 1985 standing order, jurisdiction over the Bendiburg matter was never vested in defendant Walker because Judge Phillips improperly declined to hear the petition himself.

(a) The July 12, 1985 Standing Order.

■ As mentioned above, it is plaintiff's contention that Judge Phillips' July 12, 1985 standing order by which defendant Walker was appointed judge pro tempore is of no legal effect. As a consequence, the argument goes, defendant Walker's granting of defendant DFACS' *ex parte* deprivation petition was effected in the complete absence of jurisdiction over the matter. It is for this reason that plaintiff contends defendant Walker is not entitled to judicial immunity for the alleged unconstitutional deprivation of plaintiff's parental rights.[6]

The court's consideration of this matter must necessarily begin with O.C.G.A. § 15–11–63. This code section provides,

> In the event of the disqualification, illness, or absence of the judge of the juvenile court, the judge of the juvenile court may appoint any attorney at law resident in the judicial circuit in which the court lies, any judge or senior judge of the superior courts, or any duly appointed juvenile court judge to serve as judge pro tempore of the juvenile court. In the event the judge of the juvenile court is absent or unable to make such appointment, the judge of the superior court of that county may so appoint. The person so appointed shall have the authority to preside in the stead of the disqualified, ill or absent judge....

Judge Phillips' July 12, 1985 order, expressly entered pursuant to section 15–11–63, provides in relevant part,

> Sallie T. Walker is hereby appointed as judge pro tempore in the absence of the judge of the Juvenile Court of Cobb County, Georgia, to serve during any period of disqualification, illness, or absence of the undersigned and to fully act in the happening of such an event in the place of the undersigned in any and all matters within the jurisdiction of this court.

Phillips Depo., Exhibit P–109.

Plaintiff argues that this order purports to create the permanent position of judge pro tempore, an act which section 15–11–63 does not authorize. Defendant Walker, on the other hand, argues that the juvenile court judge's inherent power "to carry on its business" carries with it the authority to issue the standing order in question, and cites the obvious benefits of giving effect to such an order.[7] Thus, the first question

---

6. For the purposes of this order only, the court will assume that this latter portion of plaintiff's theory of liability against defendant Walker is accurate. The court wishes to point out, however, that it has found and plaintiff has cited no authority for the proposition that judicial acts taken in the absence of jurisdiction necessarily fall outside the scope of judicial immunity.

7. E.g., the avoidance of unnecessary delay.

the court must address is whether defendant Walker was appointed to hear the Bendiburg matter in a manner inconsistent with state law.

For the proposition that unless a temporary judge is appointed in strict compliance with state law, he is wholly without jurisdiction to act, plaintiff cites the opinions of the Georgia Supreme Court in *Chambers v. Wynn*, 217 Ga. 381, 122 S.E.2d 571 (1961); *Adams v. Payne*, 219 Ga. 638, 135 S.E.2d 423 (1964); and *Trammell v. Trammell*, 220 Ga. 293, 138 S.E.2d 562 (1964), as well as of the Georgia Court of Appeals in *Bedingfield v. First National Bank*, 4 Ga.App. 197, 61 S.E. 30 (1908) and *Lamas v. Baldwin*, 128 Ga.App 715, 197 S.E.2d 779 (1973). In *Chambers, Adams,* and *Trammell,* the Georgia Supreme Court was confronted with judgments, orders and other judicial acts entered by superior court judges emeritus. The state law in effect at the time of these cases provided for four ways in which a judge emeritus could assume jurisdiction to hear a particular case: (1) appointment by the Governor in the event the judge is "unable to serve;" (2) when selected by the litigants; (3) when selected by the clerk of court; and (4) when appointed by the judge in writing and for a specified time, place and duration.[8] In all three instances, the judge emeritus was not appointed in strict compliance with the appropriate legislation. In *Adams,* the judge emeritus had been requested to serve by a superior court judge. This request, however, was not made in writing and further failed to specify the time, place and duration of the service. Similarly, in *Trammell,* the judge emeritus had been appointed to serve by the Governor in the place of a disqualified judge. The Governor further appointed the judge emeritus to hear any other matters arising while he served on the bench. Noting that the applicable statute allowed the Governor to make such appointments only where a particular judge "is unable to serve," the court held the latter portion of the Governor's appoint-

ment to be invalid.[9] In all three cases, the judicial acts taken by the improperly appointed judges emeritus were ruled nullities for want of jurisdiction.

In *Bedingfield* and *Lamas,* the court of appeals was confronted with improperly appointed judges pro hac vice. The law in effect when *Bedingfield* was decided provided for the appointment of such judges either by request of the litigants or by the clerk of court. When the court of appeals was made aware that the judge pro hac vice in that case has been appointed by the trial judge, the judgment appealed from was ruled to be void as having been rendered in the complete absence of jurisdiction. By the time *Lamas* was decided, the pertinent law had been changed to allow for the appointment of a judge pro hac vice by the chief judge to preside over a pending case whenever necessary by reason of the disqualification of the judge. Despite the clear wording of this law, the chief judge appointed an attorney judge pro hac vice to hear cases arising while several judges were absent from the circuit. Again, the court of appeals vacated all judicial acts taken by the improperly appointed judge pro hac vice on the grounds of lack of jurisdiction.

To the extent that plaintiff cites the above authorities for the proposition that temporary judges improperly appointed are without jurisdiction to act, the court agrees. The court does not find these cases dispositive of the case at bar, however. All five cases describe judicial appointments made in complete disregard for the clear requirements of the laws in effect at the relevant time. In the present case, the challenged judicial appointment was expressly made pursuant to the appropriate statute; i.e., O.C.G.A. § 15–11–63. Furthermore, by its own terms, the July 12, 1985 standing order limits defendant Walker's authority to act judge pro tempore to those instances specifically provided for in section 15–11–63. Thus, it cannot be said that Judge Phillips purported to exercise

---

**8.** This latter method of appointing a judge emeritus was apparently not available until soon after the opinion in *Chambers* was entered.

**9.** The *Chambers* court did not specify why the appointment in that case was improper.

more authority in executing this order than the law of Georgia allows. That the entry of a standing order is not provided for within the text of section 15–11–63 is of no consequence; it was merely the means chosen by Judge Phillips to give effect to the purpose behind the statute when the appropriate time arose. Though termed a "standing order" by the parties, the July 12, 1985 order was expressly made effective only in the event of Judge Phillips' "disqualification, illness or absence" and thus tracks the exact language of section 15–11–63. It provides for no other circumstances under which defendant Walker could assume the role of judge pro tempore and thus clearly does not purport to create an additional judgeship or any other office within the Cobb County Juvenile Court system. For these reasons, the court finds that Judge Phillips' July 12, 1985 order by which defendant Walker was appointed judge pro tempore over the Bendiburg matter was entered in full compliance with the terms of O.C.G.A. § 15–11–63.

(b) Judge Phillips' "Disqualification."

■ Plaintiff argues in the alternative that, regardless of whether the July 12, 1985 standing order was entered in compliance with section 15–11–63, defendant Walker was never vested with jurisdiction to hear the Bendiburg petition because no statutory condition precedent to her appointment occurred. Specifically, it is argued that Judge Phillips' decision not to hear the petition was not the legal equivalent of a "disqualification"[10] and thus defendant Walker's appointment to preside over the Bendiburg matter was a nullity. Plaintiff asserts that the court must distinguish "between a judge disqualifying himself, a legal act which must be predicated upon legal grounds, and a judge simply declining to hear the matter for personal reasons." Response at 14.

As previously mentioned, Judge Phillips' asserted reason for declining to hear the deprivation petition was that he was acquainted with plaintiff. Plaintiff argues that by this decision, Judge Phillips violated "the long standing rule that a judge has a duty to perform the judicial role mandated by statute and that he cannot voluntarily recuse himself without a legal basis for disqualification." Response at 15 (citations omitted). It is further argued that "merely knowing the party does not disqualify a judge." *Id.* The court agrees in principle with both of these propositions. As will be seen, however, Judge Phillips' decision not to hear the Bendiburg petition does have a legal basis which goes beyond being a mere acquaintance of a party to the action. Judge Phillips testifies as follows:

> As a result of Mr. Bendiburg's and my past professional relationship, he, as a magistrate and I, as chief magistrate of the Cobb Judicial Circuit, I was concerned as to whether my <u>impartiality might reasonably be questioned.</u> I had not reappointed Mr. Bendiburg as a magistrate when his term ended due to certain problems I had with him in carrying out his duties, and had several confrontations with him about how and when he was to carry out his duties. (Emphasis supplied).

Phillips Aff., ¶ 6.[11] The portion of Judge Phillips' testimony underscored above indicates that his decision not to hear the Bendiburg matter was based upon the language of Canon 3(C)(1)(a) of the *Georgia Code of Judicial Conduct,*[12] which provides, "a judge should[13] disqualify himself in a proceeding in which his *impartiality might reasonably be questioned,* including but not limited to instances where: (a) he has a personal bias or prejudice concerning a party.... (Emphasis supplied)."

In light of the undisputed evidence of record wherein the past relationship be-

**10.** Or, for that matter, of an "illness" or "absence."

**11.** Attached as Exhibit C to the present motion.

**12.** The text of the Georgia Code of Judicial Conduct is located in the Appendix of Volume 231 of the Georgia Reports.

**13.** The word "should" has been interpreted by the Georgia courts to mean "shall." *Savage v. Savage,* 234 Ga. 853, 218 S.E.2d 568 (1975) (cited by defendant Walker).

tween Judge Phillips and plaintiff is described, the court finds that Canon 3(C)(1)(a) of the *Georgia Code of Judicial Conduct* provides a sufficient legal basis for Judge Phillips' decision not to hear the Bendiburg petition. It follows, therefore, that Judge Phillips' decision constituted a legal disqualification and thus satisfied the requirements of section 15–11–63 and the July 12, 1985 standing order. Accordingly, the court finds that defendant Walker was a lawfully appointed judge pro tempore of the Juvenile Court of Cobb County when she entered the November 27, 1985 order granting defendant DFACS' *ex parte* deprivation petition and, as such, is entitled to full judicial immunity for her actions. *Dykes v. Hosemann,* 776 F.2d 942 (11th Cir.1985). For this reason, defendant Walker's motion for summary judgment is GRANTED.

**B.** *Defendant Walker's Motion for Imposition of Sanctions.*

■ Defendant Walker seeks the imposition of sanctions against plaintiff on the grounds that the facts available to him prior to instigation of this action sufficiently demonstrated that defendant Walker is immune from damages liability for her actions taken as judge pro tempore. While the foregoing analysis illustrates that the court agrees with defendant Walker's judicial immunity defense, the court finds that plaintiff's prosecution of this action does not rise to the level of a Rule 11 violation. The case law cited by plaintiff and discussed *supra,* as well as the arguments based thereon provide a certain measure of support for plaintiff's theory of liability against defendant Walker. For this reason, defendant Walker's motion for imposition of sanctions is DENIED.

**C.** *Defendant Cobb County's Motion to Dismiss.*

1. Fed.R.Civ.P. 12(b)(6).

Defendant Cobb County moves to dismiss on the grounds that plaintiff's complaint fails to state a claim against it upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Under Rule 12(b)(6), the burden

of demonstrating that no claim has been stated is upon the movant. *Jackam v. HCA Mideast, Ltd.,* 800 F.2d 1577 (11th Cir.1986). In addition, the court must construe the complaint liberally in favor of the plaintiff, taking the facts as alleged as true; all reasonable inferences are made in favor of the plaintiff. *Blum v. Morgan Guaranty Trust Company of New York,* 709 F.2d 1463 (11th Cir.1983). Unless it is clear that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief, defendant Cobb County's motion to dismiss must be denied. *Jackam.*

2. Municipal Liability.

■ The Supreme Court has determined that local governments may be the targets of section 1983 actions where official policy or governmental custom is responsible for deprivation of rights protected by the Constitution. *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In this regard, plaintiff contends that defendant Cobb County has a custom or policy of depriving parents of their parental rights without due process of law and further that this custom or policy is executed by the defendant county through the juvenile court system acting through defendant Walker. As grounds for its motion to dismiss, defendant Cobb County argues that defendant Walker, acting as judge pro tempore of the Juvenile Court of Cobb County, is a state official and not an official of Cobb County and thus there exists no nexus between the Cobb County Juvenile Court and the county itself. The grant or denial of defendant Cobb County's motion to dismiss thus turns on whether under Georgia law, defendant Walker is a county official for the purposes of municipal liability within the meaning of *Monell* and its progeny. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986) (whether an official is a final policy making authority is a question of state law); *City of St. Louis v. Praprotnik,* — U.S. ——, ——, 108 S.Ct. 915, 922, 99 L.Ed.2d 107 (1988) (the

identification of policy making officials is a question of state law).

In support of its argument that defendant Walker is a state official, defendant Cobb County first points to several provisions of the Constitution of the State of Georgia. Specifically, it is noted that counties are prohibited from taking any action affecting any court, including the juvenile court, or the personnel thereof. Constitution of the State of Georgia, Article 9, Section 2, ¶ 1(c)(7), and further that the judicial power of the State of Georgia is expressly vested in several classes of courts, including the juvenile courts. *Id.,* Article 6, Section 1, ¶ 1. It is likewise noted that the Georgia Constitution provides for the juvenile courts to have "uniform jurisdiction, powers, rules of practice and procedure, and selection, qualification, terms and discipline of judges." *Id.,* Article 6, Section 1, ¶ 5. Finally, defendant Cobb County points out that O.C.G.A. § 15–11–1, *et seq.,* entitled "judicial proceedings," provides for (1) the creation of a juvenile court in each county, O.C.G.A. § 15–11–3(a); (2) the appointment of juvenile court judges by the appropriate superior court, O.C.G.A. § 15–11–3(b); and (3) the appointment of clerks and other personnel by the juvenile court judge. O.C.G.A. § 15–11–9. These enactments, it is argued, are consistent with the above-described constitutional provisions and show further that defendant Walker was at all relevant times a state officer.

Plaintiff likewise relies upon certain aspects of the Georgia juvenile court system in support of his position that defendant Walker is a county official. In particular, plaintiff notes that, like other county officials, a juvenile court judge's salary, as well as that of a judge pro tempore, is paid from the county treasury. County Code Section 2–5–38; O.C.G.A. § 15–11–63. Similarly, plaintiff points out that a juvenile court judge's compensation is set by the superior court with the approval of the governing authority of the county. O.C.G.A. § 15–11–3(d)(1). In addition, a juvenile court judge is appointed by "the judge or a majority of the judges of the superior court" in the circuit in which the county is situated. O.C.G.A. § 15–11–3(b). Indeed, defendant Walker herself was appointed by a duly appointed judge of the Cobb County Juvenile Court. Finally, it is noted that (1) all expenditures of the juvenile court are "payable out of the county treasury with the approval of the governing authority ... of the county," O.C.G.A. § 15–11–3(i); (2) the compensation of the juvenile court employees are fixed by the juvenile court judge with county approval, O.C.G.A. § 15–11–9; (3) the salaries of such employees are paid out of county funds, *id;* (4) all such employees are appointed by the juvenile court judge "from eligible lists secured from the local merit boards in the county," *id;* and (5) the appointment, salary, tenure and all other conditions of employment of the employees [are] in accordance with the laws and regulations governing the [county] merit system. *Id.*

In further support of his argument, plaintiff cites the Fifth Circuit Court of Appeals opinion in *Crane v. State of Texas,* 766 F.2d 193 (5th Cir.1985). In *Crane,* the issue before the court was whether a district attorney was an officer of the State of Texas or of the county in which he served. The court first noted that,

A Texas district attorney has numerous ... attributes of a state official. [T]he geographic extent of his office's authority is created by a specific state statute for each territory within the state, some few of which comprise more than one county. In the event of a vacancy in his office, the Governor appoints his interim successor. His bond for faithful performance of his duties was to the Governor of the state. The state administrative body, the prosecutor's counsel, exists to discipline and assist the holders of his office. The district attorney is required by statute to make reports to the state attorney general upon his request. His office is created by ... the state constitution.... (Citations omitted).

*Crane* at 194–95. Despite these significant elements of state office, the court was more impressed that (1) a Texas district attorney is elected by the voters of his district, usually one county; (2) a district

attorney's powers and duties are limited to the territory of his district; (3) a district attorney is paid by county funds, though the county is partly reimbursed by the state; and (4) the fact that the office of the district attorney is created by the state constitution is diminished by the fact that other local offices—and the county itself—are similarly created by the Texas Constitution. *Id.* at 195. Based on these facts, the court concluded that the Texas district attorney was "properly viewed as a county official." *Id.*

The court finds *Crane* unpersuasive. It is strictly an application of Texas law and plaintiff makes little attempt at drawing pertinent comparisons between the state law relied upon by the Fifth Circuit and the law of the State of Georgia. In any event, one court in this district has recently had occasion to hold that, under *Georgia* law, a district attorney is a state, rather than county, official. *Owens v. Fulton County,* 690 F.Supp. 1024 (N.D.Ga.1988) (Hall, J.). In so holding, Judge Hall effectively distinguished the *Crane* opinion and noted several significant differences between Texas and Georgia law. For these reasons, the court declines to follow the Fifth Circuit Court of Appeals and instead, for the reasons set forth below, finds that defendant Walker, in her capacity as judge pro tempore of the Juvenile Court of Cobb County, is an officer of the State of Georgia. As will be seen, this conclusion rests on the various state constitutional and statutory provisions which establish and define both the judicial power and the political subdivisions of the State of Georgia.

By legislative enactment, the State of Georgia is divided into 159 counties. O.C.G.A. § 36–1–1. The power of the General Assembly to create and define the state's counties is derived generally from Article III of the Constitution of the State of Georgia (legislative power) and specifically from Article IX (counties and municipal corporations). Thus created by the state, counties

can exercise no powers not conferred upon them by the state. As the Georgia Supreme Court has stated, "Counties can exercise only such powers as are conferred on them by law, and a county can exercise no powers except such as are expressly given or necessarily implied from express grant of other powers." *DeKalb County v. Atlanta Gas Light Company,* 228 Ga. 512, 513, 186 S.E.2d 732 (1972). *See also McCray v. Cobb County,* 251 Ga. 24, 27, 302 S.E.2d 563 (1983) (county only has the powers given to it by the legislature). This is a state constitutional principle: "Each county shall [have] such powers and limitations as are provided in this constitution and as provided by law." Constitution of the State of Georgia, Article IX, section 1, para. 1.[14] In the context of defendant Cobb County's motion to dismiss, the following limitation on the power of a county is most significant: "The power granted to counties ... shall not be construed to extend to ... action affecting any court [including the juvenile court] or the personnel thereof." *Id.,* Article IX, section 2, para. 1(c)(7).

The manner in which the counties and the judicial system of the State of Georgia coexist and interrelate likewise leads to the conclusion that a juvenile court judge pro tempore is a state official. All courts of the State of Georgia, including the juvenile courts, are components of a unified state judicial system. *Id.,* Article VI, section 1, para. 2. "The judicial power of the state [is] vested exclusively in" these courts, *id.,* Article VI, section 1, para. 1, and each has "uniform jurisdiction, powers, [and] rules of practice and procedure." *Id.,* Article VI, section 1, para. 5. In regard to the relationship between these courts and the several counties of the State of Georgia, it is provided that "the state shall be divided into judicial circuits, each of which shall consist of not less than one county. Each county shall have at least one superior court ... and, where needed, a juvenile

---

**14.** The authority of the General Assembly to "broaden, limit, or otherwise regulate" the coun-

ty's exercise of the powers conferred upon them

court." [15] *Id.*, Article VI, section 1, para. 6. This paragraph does no more than provide for the orderly arrangement of the several courts of the state; no right of power, control or authority over the courts situated within their boundaries is thereby conferred upon the counties. It is thus clear that the judicial acts of a judge sitting within a particular county are the exercise of the judicial power of the state and are taken by authority of an office created by the state. Put another way, when defendant Walker entered the order granting the controversial *ex parte* deprivation petition, she did so pursuant to the judicial power of the state as vested within the Juvenile Court of Cobb County and in her capacity as judge pro tempore of the Juvenile Court of Cobb County, an office created by state law. This fact, coupled with the limitations expressly placed upon the counties with regard to "action affecting any court or the personnel thereof," clearly indicates that the several courts of the State of Georgia, including the juvenile courts, are organs of the state and that their judicial officers are state officials. That such responsibilities as compensating and approving the amount of compensation of a juvenile court judge fall on the counties is of no consequence; such provisions constitute no more than allocations of fiscal and other administrative responsibilities to the counties,[16] and no right of control or other power over the juvenile courts is expressly or impliedly conferred upon them.

In sum, the court concludes that defendant Walker, in her capacity as judge pro tempore of the Juvenile Court of Cobb County, is an officer of the State of Georgia. As such, it is clear that she cannot be the "official policymaker" responsible for establishing the alleged unconstitutional custom or policy on behalf of defendant Cobb County. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986). Inasmuch as this is the sole basis of plaintiff's theory of liability against defendant Cobb County, defendant Cobb County's motion to dismiss for failure to state a claim is GRANTED.

## III. CONCLUSION

In sum, defendant Adventist Health Systems/Sunbelt, Inc.'s motion for summary judgment is DENIED as moot. Defendant Walker's motion for summary judgment is GRANTED. Defendant Walker's motion for imposition of sanctions is DENIED. Defendant Cobb County's motion to dismiss is GRANTED.

is likewise recognized. *Id.*, Article IX, section 2, para. 1.

**15.** O.C.G.A. § 15–11–3(a) establishes a juvenile court in every county.

**16.** In any event, the State of Georgia contributes toward the salaries of juvenile court judges. O.C.G.A. § 15–11–3(d)(1).