## A97A1145. STATE OF GEORGIA v. GOBER.
(494 SE2d 724)

SMITH, Judge.

The State appeals the denial of its motion for summary judgment or dismissal. Marie Childers was employed by the Juvenile Court of the Blue Ridge Judicial Circuit and as a public service work coordinator in Cherokee and Forsyth counties until 1993, when she was terminated. She sought mandamus relief and damages against those counties, against Gober, the judge of the circuit's juvenile court, and against others. Gober filed a third-party indemnification action against the State based on the theory that any actions taken by him were in the course of his employment as a state judicial officer. The State filed a motion to dismiss based on sovereign immunity, among other things. The trial court denied the State's motion, and the State directly appealed.

The decision appealed from is not a final judgment subject to direct appeal as provided for by OCGA § 5-6-34 (a). Nor is the decision subject to the "collateral order" doctrine, which permits direct review of an order even though an action remains pending below. See *Scroggins v. Edmondson*, 250 Ga. 430, 431 (1) (c) (297 SE2d 469) (1982). The circumstances under which such an appeal may be taken are limited. Appeal is not allowed "from any decision which is tentative, informal or incomplete." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U. S. 541, 546 (69 SC 1221, 93 LE 1528) (1949). The doctrine requires that nothing be left "open, unfinished or inconclusive." (Citation and punctuation omitted.) *Scroggins*, supra at 432 (1) (c). The order appealed from must concern an issue that is "substantially separate from the basic issues presented in the complaint," and the appellant must show that "an important right might be lost if review had to await final judgment." Id.

The face of the trial court's order denying summary judgment shows that it falls short of these requirements. It recites that appellant "has a high likelihood of being found to be an officer of the State

of Georgia. . . . Whether or not there was any responsibility of the State of Georgia to indemnify Judge Gober is a question *to be determined upon presentation of further facts and consideration of further law.*" (Emphasis supplied.) The decision clearly does not purport to make any final conclusion or finding with regard to appellant's status or the State's obligation to indemnify him. Instead, the trial court simply delayed ruling on the issues presented to it. The order appealed from consequently left the questions at issue open, unfinished, and inconclusive. The State's appeal is therefore dismissed.

*Appeal dismissed. Andrews, C. J., McMurray, P. J., Birdsong, P. J., Ruffin and Eldridge, JJ., concur. Beasley, J., dissents.*

BEASLEY, Judge, dissenting.

The majority concludes that the order of the trial court denying the State's motion for summary judgment or dismissal on the issue of sovereign immunity is not directly appealable under the collateral order doctrine established in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U. S. 541 (69 SC 1221, 93 LE 1528) (1949), because the order does not completely and conclusively resolve the issue appealed. I respectfully dissent.

1. Under Georgia law, sovereign immunity is "an 'immunity from suit rather than a mere defense to liability' and is 'effectively lost if a case is erroneously permitted to go to trial.' " (Emphasis omitted.) *Griesel v. Hamlin*, 963 F2d 338, 340 (2) (11th Cir. 1992), citing *Mitchell v. Forsyth*, 472 U. S. 511, 526 (105 SC 2806, 86 LE2d 411) (1985). Its exclusion from the suit is precisely what the doctrine is intended to ensure. See *Patterson v. State*, 248 Ga. 875 (287 SE2d 7) (1982); *Puerto Rico Aqueduct &c. Auth. v. Metcalf & Eddy, Inc.*, 506 U. S. 139 (113 SC 684, 121 LE2d 605) (1993). "[T]he value to the States of their . . . immunity . . . is for the most part lost as litigation proceeds past motion practice." *Puerto Rico Aqueduct*, supra, 506 U. S. at 145.

The trial court's order does conclusively resolve the question of whether the State is required to proceed to trial. The pivotal issue is whether Judge Gober is an officer of the state or of the counties. This is purely a legal question. The parties in their appellate briefs have raised absolutely no contested issues of fact necessary for a resolution of the issue.

For the foregoing reasons, the order is immediately appealable. A trial court's denial of a motion for summary judgment on a claim of sovereign immunity is appealable under *Cohen* "to the extent that it turns on an issue of law." *Mitchell*, supra, 472 U. S. at 530. The doctrine was adopted for civil cases in Georgia in *Scroggins v. Edmondson*, 250 Ga. 430 (1) (297 SE2d 469) (1982).

The State is not deprived of its right of immediate appeal merely because the trial court's order contains the "unadorned statement"

that material issues of fact remain. See *Behrens v. Pelletier*, 516 U. S. ___ (116 SC 834, 133 LE2d 773, 782) (1996). The harm created by the majority's erroneous dismissal of the appeal is compounded by the fact that resolution of the issues presented for decision necessitates a reversal of the judgment. Not doing so at this juncture could pave the way for inevitable error when the case is returned to the trial court and proceeds there.

2. Resolution of the question of whether Judge Gober is an officer of the state or the counties requires a review of various provisions of the Georgia Constitution and Code relating to juvenile courts and their judges and employees, as well as cases construing these provisions. If he is a state officer or employee, issues arise as to whether the State may be brought into this action as a third-party defendant under the Tort Claims Act (OCGA § 50-21-20 et seq.) and whether insurance provided pursuant to OCGA § 45-9-1 (c) may cover Judge Gober's personal liability.

By state law, a juvenile court is created in every county in this state. OCGA § 15-11-3 (a). The Georgia Constitution of 1983 includes juvenile courts as one component of a unified state judicial system. Art. VI, Sec. I, Pars. I and II. They are hinted at in Paragraph IV with respect to cases of juvenile offenders. On the other side of the coin, the counties' powers do not extend to "[a]ction affecting any court or the personnel thereof." Art. IX, Sec. II, Par. I (c) (7). The judicial power of the State is vested exclusively in the classes of courts within this system, including juvenile courts. Id.

A juvenile court judge is appointed by a majority of the judges of the superior court in each circuit and serves for a term of years equal to that of the superior court judges of the circuit. OCGA § 15-11-3 (d) (1). Compensation is generally set by the same judges with the approval of the governing authorities of the counties for which the judge is appointed. OCGA § 15-11-3 (d) (1) further provides that "[t]he state, out of funds appropriated to the judicial branch of government, shall contribute toward the salary of the [juvenile] judges on a per circuit basis" in stated amounts, although "[n]o state funds shall be available for [these] contributions . . . until the General Assembly has appropriated funds for that specific purpose." The record does not show that the General Assembly has appropriated any such funds.

The juvenile court is assigned and attached to the superior court of the county for administrative purposes. OCGA § 15-11-3 (i). The juvenile court judge is not subject to the residency requirements contained in OCGA § 45-2-1 (7) for holding civil office in a county. OCGA § 15-11-3. Nor is the judge of the juvenile court a "county officer" under Art. IX, Sec. I, Par. III of the Georgia Constitution of 1983.

Yet, "[a]ll expenditures of the [juvenile] court are declared to be

an expense of the court and payable out of the county treasury with the approval of the governing authority or governing authorities of the county or counties for which [the judge] is appointed." OCGA § 15-11-3 (i). The compensation of juvenile court employees shall be fixed by the judge with the approval of the governing authority of the county, and the salaries of the employees shall be paid out of county funds. OCGA § 15-11-9. These give the county the authority, as well as the responsibility (see *Wilson v. Southerland*, 258 Ga. 479 (371 SE2d 382) (1988)), for funding the operations of the court.

*Thornton v. State*, 157 Ga. App. 75, 76 (2) (276 SE2d 125) (1981), characterized a juvenile court as a "county court." But *Thornton* was decided prior to the adoption of the 1983 Georgia Constitution, which encompassed juvenile courts in the state judicial system. *Thornton* held that a juvenile court judge had authority to issue an arrest warrant for an adult under Code Ann. § 27-102 (now OCGA § 17-4-40), which granted such authority to any judge of various courts including any "county court." OCGA § 17-4-40 has been amended and refers to state courts but not to county courts.

*Bendiburg v. Dempsey*, 692 FSupp. 1354 (N.D. Ga. 1988), held that the county could not be held liable under 42 USC § 1983 for an order of the judge granting an ex parte child deprivation petition. After reviewing the above-referenced statutory and constitutional provisions, the court concluded that "the judicial acts of a [juvenile] judge sitting within a particular county are the exercise of the judicial power of the state and are taken by authority of an office created by the state," 692 FSupp. at 1363, and a judge pro tempore of a juvenile court in Georgia is an officer of the state and not the county. As held in *Bendiburg*, so here: in Georgia a juvenile court judge is a state judicial officer.

3. Judge Gober's third-party complaint, brought under OCGA § 9-11-14 (a) and (c), alleges that in connection with Childers' termination as an employee he was at all times acting in the course of his duties as a judicial officer of the state, so that if he is liable to Childers, then the State of Georgia is liable to him by virtue of his status as a state judicial officer. Although he is as a matter of law a state officer, the State's sovereign immunity bars his third-party complaint.

The State has sovereign immunity from suit except where it provides by law otherwise. Ga. Const., Art. I, Sec. II, Par. IX. One instance of the affirmative waiver which must be shown by a plaintiff is the limited waiver in the Tort Claims Act. OCGA § 50-21-23. There the State allows a suit against itself (with certain exceptions and limitations) "for the torts of state officers and employees while acting within the scope of their official duties or employment," but it expressly "shall have no liability for losses resulting from conduct on

the part of state officers or employees which was not within the scope of their official duties or employment." The reason the State has waived its sovereign immunity in this way is that the General Assembly recognizes "the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity." OCGA § 50-21-21 (a). Those troublesome results for which the cure was enacted in 1992 are the legal inability of people injured by torts of state officers and employees to recover from the tortfeasors' employers.

In providing this window of opportunity to recover for injury, the State has taken onto itself the whole load, because in the Tort Claims Act, it has freed its officers and employees from liability for such torts. OCGA § 50-21-21 (b) declares as public policy that "state officers and employees shall not be subject to lawsuit or liability arising from the performance or nonperformance of their official duties or functions." OCGA § 50-21-25 (a) implements this policy and bestows this immunity on its officers and employees for their conduct.

It is obvious that defendant Gober could not depend on the Tort Claims Act as authority for demanding indemnity should he be held liable to former employee Childers in tort for terminating her for the reason and in the manner he did, and with the consequences he imposed and the consequences which resulted. The State would not be liable to him, for he claims no tort by a state officer or employee against himself. Besides, he could not expect the State to indemnify him when he was statutorily clothed with immunity from Childers' suit had he pursued it. OCGA § 50-21-25 (a). Although the State might have been liable to Childers under this Act had she sued the State, she did not do so. She did file her suit just within two years of her suspension and firing, which would meet the two-year statute of limitation provided by the Tort Claims Act, OCGA § 50-21-27, but she did not sue the State because she considered Judge Gober to be a county officer, not a state officer.

The Tort Claims Act provides: "In the event that the state officer or employee is individually named for an act or omission for which the state is liable under this article, the state government entity for which the state officer or employee was acting must be substituted as the party defendant." OCGA § 50-21-25 (b). No one asked for this, not Gober, who claims the State is potentially obligated to him as indemnitor, nor the counties, who urge that Gober is a state rather than county official, nor plaintiff Childers, who sees Judge Gober only as the latter. Certainly the State, once it became aware of the suit by service of the third-party complaint upon it, would not voluntarily move to substitute itself as defendant in place of Judge Gober. Why would it subject itself to liability by making itself a party, particu-

larly when Judge Gober himself could assert immunity? And the trial court had no sua sponte obligation to bring in a substitute party. OCGA § 9-11-19 governs the joinder of necessary parties and casts no initiating duty on the trial court in this regard. Neither does OCGA § 50-21-25 (b). That provision, by the way, does not address how the substitution of the State after the suit has been filed can accommodate the pre-suit notice required in OCGA § 50-21-26.

As a basis for his claim of indemnity, Judge Gober cannot rely on OCGA § 45-9-1 (a) either. That statute permits government institutions to provide liability insurance or contracts of indemnity or self-insurance to its officers, officials, or employees as additional compensation. This protection would be "against personal liability for damages arising out of the performance of their duties or in any way connected therewith." This goes hand in glove with the statutory immunity found in the Tort Claims Act, for it would cover liability only for which the officer, official or employee is "not immune from liability." OCGA § 45-9-1 (a). Gober has not alleged nor shown that the State is a self-insurer or indemnitor, even assuming he would have personal liability for the acts of which Childers complains.

There being no basis shown for the waiver of the State's sovereign immunity from suit brought by Judge Gober against it through his third party complaint, the State was entitled to summary judgment.

DECIDED DECEMBER 5, 1997 — 

*Thurbert E. Baker, Attorney General, Brenda H. Cole, George P. Shingler, Deputy Attorneys General, Alan Gantzhorn, Jennifer D. Roorbach, Thomas K. Bond, Assistant Attorneys General*, for appellant.

*Ted B. Herbert, Harry M. Moseley*, for appellee.

